**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIIO**
**EASTERN DIVISION**

| | |
|---|---|
| **KARA FIRST**, | |
| 1342 Vanderhoof Road<br>New Franklin, Ohio 44203 | CASE NO. 2:22-cv-03296 |
| and, | |
| **SUZANNE FIRST**, | JUDGE |
| 1342 Vanderhoof Road<br>New Franklin, Ohio 44203 | |
| | MAGISTRATE JUDGE |
| **PLAINTIFFS,** | |
| v. | |
| **J&C AMBULANCE SERVICES, INC.,** | **CLASS ACTION COMPLAINT WITH JURY DEMAND** |
| C/O Statutory Agent Richard W. Arnold<br>Renaissance Center<br>4580 Stephen Circle NW, Suite 100<br>Canton, Ohio 44718 | |
| and, | |
| **AMERICAN EMS, LLC**, | |
| C/O Statutory Agent Suliman Conteh<br>5594 Forest Hill Boulevard<br>Columbus, Ohio 43231 | |
| and, | |
| **FORTUNE-HR, LLC**, | |
| C/O Statutory Agent John R. Pine<br>7652 Sawmill Road, Suite 364<br>Dublin, Ohio 43016 | |
| **DEFENDANTS.** | |

## I.    NATURE OF THE CLAIMS

1.    This matter is an employment discrimination and retaliation case with a class action component for systemic violations of the Employee Retirement Income Security Act ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Plaintiff Kara First worked as an emergency medical technician ("EMT") for a company called Stark Summit Ambulance, owned by Defendant American EMS, LLC ("Defendant AEMS").  In July of 2019, Ms. First suffered a workplace injury to her back that substantially impaired her ability to bend and lift.  As a result of this injury, Ms. First pursued a workers' compensation claim.  She also requested, and received, temporary light duty as an accommodation.  Eventually, however, the company rescinded this accommodation and placed Ms. First on a continuous leave of absence.  As a result, Ms. First requested, and obtained, leave under the Family and Medical Leave Act ("FMLA") that made her absences job protected.

2.    On or about September 1, 2020, while Ms. First was on FMLA leave, Defendant AEMS sold Stark Summit Ambulance to Defendant J&C Ambulance Services, Inc. ("Defendant J&C").  The latter took over as the successor employer.  Defendant J&C purchased the assets and continued to operate Stark Summit Ambulance the same as before.  It kept the "Stark Summit Ambulance" name and trademarks.  It kept key supervisors.  It kept many non-supervisory employees.  It took over existing customer contracts.  It continued to use the same facilities and equipment.  It even kept the website of "starksummit.com," where it describes that, after Defendant J&C's asset purchase, "Stark Summit was quickly reassembled and reopened" with "many of the former employees" who helped it "continu[e] the highly quality standards the public had been used to when calling upon Stark Summit for services."  That webpage can be accessed at the following link: https://starksummit.com/about.

3.     Defendant J&C, however, did not continue to employ Ms. First.  At the time Defendant J&C took over Stark Summit Ambulance as the successor employer, Ms. First was on FMLA leave with a pending workers' compensation claim.  She asked Defendant J&C to continue employing her as well, but the company told her, "not until your workers' compensation claim is settled."  Ms. First also asked if Defendant J&C must keep her employed because she was on FMLA leave, but the company replied that her FMLA leave "was [allegedly] not our problem" and refused to employ her until she no longer required workplace restrictions.

4.     To the contrary, Ms. First's FMLA leave was Defendant J&C's responsibility (or "problem") because it is the successor employer for Stark Summit Ambulance.  The FMLA, at 29 U.S.C. § 2611(4)(A)(ii)(II), specifically defines an employer to include "any successor in interest of an employer."  Under the FMLA regulation found at 29 C.F.R. § 825.107(c), successor employers must "continue leave begun while employed by the predecessor, including maintenance of group health benefits during the leave and job restoration at the conclusion of the leave."  Here, Defendant J&C's asset purchase of Stark Summit Ambulance—and its continuation of the company with the same name, same trademarks, key supervisors, many of the same employees, and the same location—fits the multifactor test found at 29 C.F.R. § 825.107(a) and adopted by the Sixth Circuit in *Cobb v. Contract Transport, Inc.*, 452 F.3d 543, 550-57 (6th Cir. 2006) and *Grace v. USCAR*, 521 F.3d 655, 671-76 (6th Cir. 2008).  As a result, Defendant J&C violated the FMLA by not continuing her health insurance during her leave, by not providing Ms. First her job restoration rights at the end of the leave, and by using her FMLA leave as a negative factor in not continuing her employment.

5.     Defendant J&C also engaged in disability discrimination by refusing to continue the employment of Ms. First, an employee whose workplace injury qualifies as a disability that

would have required a temporary reasonable accommodation. Several Ohio state and federal courts have found workplace injuries like Ms. First's injury qualify as disabilities for the Americans with Disabilities Act and the comparable state law. Ms. First, had her disability been accommodated, could have performed her job with Stark Summit Ambulance without light duty or a continuous leave of absence. For instance, her bending and lifting restrictions could have been accommodated by assigning her to an ambulance with a Striker Lift System that lifts patient cots into an ambulance as opposed to manual lifting by the EMTs. Or, alternatively, she could have been assigned to an ambulance running a three-person crew that could assist her with lifting patient cots, something that was not uncommon in the industry. Indeed, Ms. First recovered prior to the expiration of her twelve weeks of FMLA leave and was able to return to work without the need for any accommodations.

6. Additionally, Defendants violated ERISA, as amended by COBRA. When Stark Summit Ambulance was owned by Defendant AEMS, it used a professional employer organization or "PEO." That PEO was Defendant Fortune-HR, LLC d/b/a Alloy Employer Services ("Defendant Alloy"). A PEO enters business arrangements in which it jointly employs its client's workers and assumes its client's human resources responsibilities. Together, Defendant AEMS and Defendant Alloy jointly employed all employees of Stark Summit Ambulance, including Ms. First. Under their PEO contract, Defendant Alloy provided the group health insurance for all employees that it and Defendant AEMS jointly employed. This included Ms. First and her then-domestic partner, and now-spouse, Plaintiff Suzanne First.

7. After Defendant AEMS sold Stark Summit Ambulance to Defendant J&C, it ceased using Defendant Alloy as a PEO. Instead, the employees became directly employed by Defendant J&C as the successor employer. Thus, when Defendant J&C purchased Stark Summit

Ambulance, it resulted in a separation from service for all employees under COBRA, including Ms. First. They, and their dependents, lost their group health insurance. At that point, Defendant AEMS and Defendant Alloy were required to send a COBRA notification letter and provide enrolled employees like Ms. First, and their dependents, an opportunity to continue their group health insurance coverage. They never did so for Ms. First, for any other employee, or for any of their dependents. Instead, they told Ms. First to go look for new health insurance on the exchanges, which they colloquially referred to as, "go get Obamacare." Further, because Defendant J&C was a successor employer, COBRA required it to also provide a notification letter and the right to continue health insurance on its group health insurance plan. It never did so for Ms. First, for any other employee, or for their dependents. As a result, Defendant J&C likewise violated COBRA. Because there were numerous employees and dependents affected, these COBRA violations were systemic and result in a class action component to this case.

8.      Accordingly, Ms. First and her spouse now file this civil action. They seek to recover for the harm they have suffered, to punish Defendants for their conduct, and to deter Defendants from ever perpetrating their conduct against any other person.

## II.    JURISDICTION AND VENUE

9.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiffs' claims made under federal law because those claims constitute a civil action arising under the Constitution, laws, or treaties of the United States.

10.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' claims made under state law because those claims are so related to the claims made under federal law that they form part of the same case or controversy under Article III of the United States Constitution.

11.     Pursuant to Ohio Revised Code Sections 2307.381-.385, and the Due Process Clauses of the federal and Ohio Constitutions, this Court has personal jurisdiction over Defendants because they are residents of, and have continuous and systematic contacts with, the State of Ohio.

12.     Pursuant to 28 U.S.C. § 1391(b)(1), this Court is the appropriate venue because the defendants are all residents of the State of Ohio and Southern District of Ohio is a judicial district in which at least one of the defendants resides.

13.     Pursuant to 28 U.S.C. § 1391(b)(2) this Court is the appropriate venue because the Southern District of Ohio is a judicial district in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

14.     Pursuant to Rule 82.1(d) of the Local Civil Rules of the United States District Court for the Southern District of Ohi, the Eastern Division at Columbus is the appropriate division because one or more of the defendants have their principal place of business in Franklin County, Ohio.

### III.     PARTIES

15.     Plaintiff Kara First ("Ms. First") is a natural person who is a resident of Summit County, Ohio.  Defendant AEMS and Defendant Alloy jointly employed Ms. First from February 20, 2018, up until September 1, 2020.  At that point, Defendant J&C, as the successor employer, refused to continue Ms. First's employment.

16.     Plaintiff Suzanne First ("Mrs. First") is a natural person who is a resident of Summit County, Ohio.  She was Ms. First's domestic partner during her joint employment with Defendant AEMS and Defendant Alloy and is now her spouse.  She was enrolled in the group health insurance plan they offered as a dependent of Ms. First.

17.     Defendant J&C is a for-profit corporation that incorporated in the State of Ohio and has its principal place of business in Stark County, Ohio. Defendant J&C is a professional provider of medical transportation services. On or about September 1, 2020, Defendant J&C purchased Ms. First's former employer, Defendant AEMS, in an asset purchase agreement and hired many its employees. It declined to hire Ms. First at that point, citing her workers' compensation claim, disability, and FMLA leave.

18.     Defendant AEMS is a for-profit limited liability company that formed in the State of Delaware and has its principal place of business in Stark County, Ohio. Defendant AEMS was a professional provider of medical transportation services. It had approximately 150 employees. Defendant AEMS and Defendant Alloy jointly employed Ms. First from February 20, 2018, up until September 1, 2020.

19.     Defendant Alloy is a for-profit limited liability company that formed in the State of Florida and has its principal place of business in Franklin County, Ohio. Defendant Alloy is a professional employer organization (PEO). As a PEO, the company enters business arrangements in which it jointly employs its client's workers and assumes its client's human resources responsibilities. It was the PEO for Defendant AEMS during the relevant time period.

## IV.     FACTS

### A.     Plaintiff's Employment

20.     Ms. First was hired by Defendant AEMS and Defendant Alloy on or about February 18, 2018 as an emergency medical technician or "EMT." In this role, she consistently worked a rotating twelve-hour shift, which resulted in her working between eighty and ninety hours every two-week pay period.

21. Ms. First's job duties consisted primarily of driving an ambulance to patients requesting medical assistance, providing that medical assistance, lifting patients into the ambulance, and transporting them to facilities at which they would be provided additional medical care. Her job required her to regularly, run, stand, walk, lift, and bend.

22. Throughout her joint employment with Defendant AEMS and Defendant Alloy, Ms. First's job performance always met or exceeded the expectations of her supervisor. In fact, the Director of Operations, Thomas Pengel, informed her at one point that she was the best EMT at Defendant AEMS. Throughout Ms. First's employment, Mr. Pengel made several comments about how important she was to the EMT team.

**B.    The PEO Relationship Between Defendant AEMS and Defendant Alloy**

23. At all relevant times during Ms. First's employment, Defendant Alloy was the PEO for Defendant AEMS pursuant to a Service Agreement.

24. A true and accurate copy of the Service Agreement is attached as Exhibit 1 to this Complaint.

25. Under Section 1.1 of the Service Agreement, Defendant AEMS and Defendant Alloy agreed that Defendant Alloy would provide "administration of, and payment for, selected employee benefits plans" including group health insurance plans.

26. Under Section 1.2 of the Service Agreement, Defendant AEMS and Defendant Alloy agreed that Defendant Alloy may "provide[] human resources consulting services to Client on employment-related issues" which includes "human resource advice and guidance."

27. Under Section 3.1 of the Service Agreement, Defendant AEMS and Defendant Alloy agreed that Defendant Alloy "will be the employer of the employees for purposes of any

employee benefit plan, as that term is defined in Section 3(3) of the Employee Retirement Income Security Act of 1974 (ERISA) . . . ."

28.     Under Section 6.2(b) of the Service Agreement, Defendant AEMS and Defendant Alloy agreed that Defendant AEMS would "comply with [Defendant] Alloy's directives regarding the Family Medical Leave Act ('FMLA') . . . ."

29.     Under Section 9.3 of the Service Agreement, Defendant AEMS and Defendant Alloy agreed that Defendant AEMS would notify Defendant Alloy "promptly as practicable upon the occurrence of any qualifying event that triggers COBRA eligibility."

30.     Defendant Alloy provided the group health insurance plan (the "Plan") for employees of Defendant AEMS.  Defendant AEMS and/or Defendant Alloy was the Plan sponsor and Defendant Alloy was the Plan administrator.

**C.      Plaintiff's Workplace Injury and Resulting Disability**

31.     In or around July of 2019, Ms. First injured her back in the course of her employment.  She filed a workers' compensation claim for the injury.

32.     This injury substantially limits Ms. First in several major life activities, such as walking, standing, running, bending, lifting, reaching, and pulling.  It is sufficiently severe to qualify as a disability under Ohio and federal law.

33.     Ms. First's physicians temporarily restricted her to light duty at work to prevent further injury to her back and to allow her to properly heal.

34.     At Ms. First's request, Defendant AEMS initially accommodated her workplace restrictions by allowing her to work light duty in its quality assurance department.

35.     While accommodated with this temporary position in Defendant AEMS's quality assurance department, Ms. First continued to work a full-time schedule of forty hours per week.

36.     When Thomas Pengel, the Director of Operations, placed Ms. First on light duty, he commented that she would be a good fit because her paperwork was often impeccable.

37.     In May of 2020, however, Defendant AEMS rescinded this accommodation of Ms. First's workplace restrictions with the temporary light-duty position in its quality assurance department.  The company instead placed Ms. First on an unpaid leave of absence until her physicians completely lifted her work restrictions.

38.     At all times when her back injury substantially limited one or more of her major life activities, Ms. First could have performed her essential job duties as an EMT if she was given one of the following accommodations:

        a.     She could have driven an ambulance without violating her work restrictions;

        b.     She could have performed all required lifting if she was provided with an ambulance with a lifting apparatus such as the Stryker lift system.  Defendant AEMS had two ambulances equipped with such an apparatus; and/or

        c.     She could have performed all required lifting if she was provided a cot with a power lifting function, or an additional employee to lift heavy patients.  Defendant AEMS had three such cots.

39.     Ms. First proposed these accommodations to Defendant AEMS, but it would not engage in the interactive process with Ms. First to explore them.  Instead, the company rejected them and told Ms. First she had to be on an unpaid leave of absence until she was able to perform her job without any need for an accommodation.

40.     Eventually, Ms. First applied for continuous FMLA leave.  Defendant AEMS and Defendant Alloy approved the FMLA leave.

### D.     Defendant J&C Purchases Defendant AEMS

41.     On or about September 1, 2020, while Ms. First was on FMLA leave, Defendant AEMS ceased all operations and terminated all approximately 150 employees.

42.     Defendant AEMS's owners announced to the employees that they had sold the company to Defendant J&C in an asset-purchase agreement.  Ms. First's supervisor referred to the sale as a "merger."

43.     Defendant J&C purchased the Stark Summit Ambulance assets of Defendant AEMS and continued to operate the company the same as before.  Specifically, the following is a non-exhaustive list of examples of how Defendant J&C acted as the successor employer:

a.      Defendant J&C purchased, and continued to use, the "Stark Summit Ambulance" name and trademarks.

b.      Defendant J&C purchased, and continued to use, the same facilities at the same locations for Stark Summit Ambulance.

c.      Defendant J&C purchased, and continued to use, the same equipment for Stark Summit Ambulance.

d.      Defendant J&C purchased, and continued, the existing customer contracts for Stark Summit Ambulance.

e.      Defendant J&C continued to employ the same supervisors and many of the same non-supervisory employees of Stark Summit Ambulance.  Defendant J&C promised these employees that they would retain their current pay, seniority, and other fringe benefits offered by Defendant AEMS and Defendant Alloy.  Defendant J&C continued to employ approximately sixty to seventy percent of the same Stark Summit Ambulance employees as Defendant AEMS and Defendant Alloy.

11

     f.     Defendant J&C purchased, and continued using, the Stark Summit Ambulance website of "starksummit.com," where it describes that, after Defendant J&C's asset purchase, "Stark Summit was quickly reassembled and reopened" with "many of the former employees" who helped it "continu[e] the highly quality standards the public had been used to when calling upon Stark Summit for services."

### E.    Plaintiff's Termination of Employment and the Failure to Hire

44.    Ms. First was among the employees terminated by Defendant AEMS and Defendant Alloy on September 1, 2020.

45.    Ms. First's supervisors at Defendant AEMS instructed all employees that they could apply for employment with Defendant J&C and keep their same jobs at Stark Summit Ambulance.

46.    In response, Ms. First contacted a representative of Defendant J&C and asked to apply for her job with Stark Summit Ambulance.

47.    A representative of Defendant J&C refused to allow Ms. First to even fill out an application. When Ms. First asked why, the representative for Defendant J&C replied that Ms. First was ineligible for hire until her claim for workers' compensation benefits was settled and she was able to work without restrictions and without any need for a reasonable accommodation for her medical condition.

48.    Ms. First also stated that her job was protected by FMLA, and so Defendant J&C should allow her to remain employed. In response, however, the representative for Defendant J&C said, "that's not our problem," and claimed that the company had no obligation to protect Ms. First's job under the FMLA.

49.     On August 31, 2020, the day before the asset-purchase agreement was announced, Ms. First had spoken with Roxanne Sims, the human resources representative for Defendant AEMS, who told Ms. First that she had ten weeks of FMLA remaining as of that date.

50.     Had Defendant J&C continued Ms. First's employment, she would have recovered from her disability, and been able to return to her job position without the need for any accommodation prior to the expiration of her remaining ten weeks of FMLA.  Specifically, Ms. First's physician was willing to remove all of her workplace restrictions in October of 2020.

### F.     The Systemic Failure to Send COBRA Notifications

51.     When Defendant AEMS and Defendant Alloy terminated Ms. First's employment, they did not notify her of her right to continue group health insurance coverage as required by COBRA.  Instead, she received a letter from Defendant AEMS's Director of Operations informing her that "[t]he company closed, and as such she does not have access to COBRA."  A true and accurate copy of that letter is attached as Exhibit 2 to this Complaint.[1]

52.     When Defendant AEMS and Defendant Alloy terminated Ms. First's employment, Mrs. Suzanne First was her domestic partner and was a dependent also enrolled in the Plan.  Defendant AEMS and Defendant Alloy also did not notify her of her right to continue group health insurance coverage as required by COBRA.  Instead, she received a letter like Ms. First.  A true and accurate copy of that letter is attached as Exhibit 3 to this Complaint.

53.     While Defendant AEMS may have ceased operations, upon information or belief, the Plan did not terminate because it was sponsored and administered by Defendant Alloy whose operations did not cease.  As a result, Ms. and Mrs. First should have received COBRA notifications but did not.

---

[1]     At the time of her termination, Ms. First's last name was Yarnell.  She subsequently married her spouse, Suzanne First, and changed her last name to First.

54. In the alternative, if the Plan did terminate, then under 26 C.F.R. § 54.4980B-9, Defendant J&C as the successor employer was required to send COBRA notifications and offer employees and their enrolled dependents the right to continue group health insurance. Here, however, Defendant J&C did not offer group health insurance to any employees or their dependents nor did it send them COBRA notifications.

55. Of the approximately 150 employees who worked for Stark Summit Ambulance at the time Defendant J&C purchased it, Defendant J&C hired and offered group health insurance to approximately sixty to seventy percent. As a result, like Ms. First, between 45 and 60 employees were not hired and not offered group health insurance by Defendants, nor did they receive COBRA notifications. Additionally, many of these employees had dependents enrolled in the Plan who, like Mrs. First, were not offered group health insurance by Defendants nor did they receive COBRA notifications.

## V. CLASS ACTION ALLEGATIONS

56. Plaintiffs bring the claims under ERISA, as amended by COBRA, on behalf of themselves and as a class action under Rules 23(a), (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure seeking equitable relief and damages on behalf of the following two classes (collectively, the "Classes"):

    a. All Stark Summit Ambulance employees of Defendant AEMS and Defendant Alloy for whom the following were true: (i) whose employment was terminated on or about September 1, 2020 due to the asset purchase by Defendant J&C; (ii) who were enrolled in the Plan; and (iii) who were not notified of their right to continue group health insurance coverage under COBRA (the "Employee Class").

      b.     All dependents of any member of the Employee Class for whom the following were true: (i) who were enrolled in the Plan; and (ii) who were not notified of their right to continue group health insurance coverage under COBRA (the "Dependent Class").

57.    While Plaintiffs do not know the exact number of the people within the Classes, there are likely to be at least 90 to 120, or more, given the number of employees and assuming, on average, at least one enrolled dependent.  Given this number of employees and dependents, the class is so numerous that joinder of all members is impracticable.

58.    Common questions of law and fact exist as to all members of the Classes.  The ERISA claims on which Plaintiffs will seek class certification hinge on whether Defendants sent COBRA notifications, whether Defendants AEMS and/or Alloy continued to sponsor and administer the Plan, whether Defendant J&C is a successor employer under ERISA, and whether Defendants provided any COBRA notifications.  As a result, common questions of law and fact include without limitation the following:

      a.     Whether Defendants violated 29 U.S.C. § 1132(c)(1) when they failed to meet the requirements of 29 U.S.C. § 1166(2) and 29 U.S.C. § 1166(4) with respect to Plaintiffs and the Classes by providing the required COBRA notifications.

      b.     The appropriate class-wide injunctive relief requiring Defendants to offer group health insurance coverage to the members of the Classes.

      c.     Pursuant to 29 U.S.C. § 1132(c)(1), the appropriate class-wide actual damages for the cost of any uninsured medical care, reduced by the cost of insurance premiums, for Plaintiffs and for each member of the Classes.

d.     Pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1, the appropriate class-wide statutory damages of up to $110 per day late on the COBRA notifications for Plaintiffs and for each member of the Classes.

59.     Plaintiffs' claims under ERISA, as amended by COBRA, are typical of the claims belonging to the Classes. Plaintiffs and the class members were all similarly affected by Defendants violating ERISA, as amended by COBRA.

60.     Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of employment litigation and class action litigation.

61.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants. Alternatively, adjudications with respect to individual members of the Classes would, as a practical matter, be dispositive of the interests of the other members of the Classes not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

62.     For the claims asserted by the Classes, Defendants have acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief is appropriate.

63.     For the claims asserted by the Classes, the questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members. Furthermore, class action treatment is a superior method for the fair and efficient adjudication of the controversy because such treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that individual actions would cause. Further, the

benefits of proceeding through the class mechanism, including providing injured persons with redress for claims that are not practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

## VI.    CLAIMS FOR RELIEF

### COUNT I

**Violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2611, et seq.
(Interference)**

**By Plaintiff Kara First Against Defendants**

64.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

65.     Plaintiff was at all relevant times an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

66.     Defendants were at all relevant times "employer[s]" within the meaning of 29 U.S.C. § 2611(4).

67.     Consistent with 29 U.S.C. §§ 2611(11), and 2612(a)(1)(D), Plaintiff was entitled to leave to care for her own serious health condition that made her temporarily unable to perform the essential functions of her job.

68.     Plaintiff notified Defendants of her intention to take FMLA leave.

69.     Defendants denied Plaintiff the full benefits of her FMLA leave.

70.     As a proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in amount to be determined at trial.

71.     Consistent with 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to liquidated damages because Defendants did not act in good faith and did not have reasonable grounds for believing that their actions complied with the law.

72.     Consistent with 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to reasonable attorneys' fees and costs incurred in pursuing Count I.

## COUNT II

### Violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2611, et seq. (Retaliation)

### By Plaintiff Kara First Against All Defendants

73.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

74.     Defendants were at all relevant times "employer(s)" within the meaning of 29 U.S.C. § 2611(4).

75.     Plaintiff availed herself of a right protected by the FMLA.

76.     Defendants knew of Plaintiff's protected activity.

77.     Plaintiff was subjected to a materially adverse employment action; namely, Defendants' failure to hire her.

78.     A causal connection exists between Plaintiff's exercise of protected activity and the adverse employment action she suffered.

79.     As a proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in amount to be determined at trial.

80.     Consistent with 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to liquidated damages because Defendants did not act in good faith and did not have reasonable grounds for believing that their actions complied with the law.

81.     Consistent with 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to reasonable attorneys' fees and costs incurred in pursuing Count II.

## COUNT III

### Violation of Ohio Revised Code Sections 4112.02 and/or 4112.99
### (Disability Discrimination – Failure to Hire)

### By Plaintiff Kara First Against All Defendants

82.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

83.     Plaintiff was at all relevant times an "employee" within the meaning of Ohio Revised Code Section 4112.01(A)(3).

84.     Plaintiff at all relevant times had a "disability" within the meaning of Ohio Revised Code Section 4112.01(A)(13).

85.     Defendants were at all relevant times "employer(s)" within the meaning of Ohio Revised Code Section 4112.01(A)(2).

86.     Defendants violated Ohio Revised Code Sections 4112.02 and/or 4112.99 when they failed to hire Plaintiff because of her disability or disabilities.  Alternatively, Plaintiff's disability or disabilities was a motivating factor in the decision by Defendants to fail to hire Plaintiff.

87.     As a proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

88.     Consistent with Ohio Revised Code Section 2315.21, Plaintiff is entitled to punitive damages because the actions or omissions of Defendants demonstrate malice or aggravated or egregious fraud, and/or Defendants as principals or masters knowingly authorized, participated in, or ratified the actions or omissions that so demonstrate.

89.     Consistent with the rule in *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 71 Ohio App.2d 174, 327 N.E.2d 654 (1975), and because Plaintiff is entitled to punitive damages, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count III.

## COUNT IV

### Violation of Ohio Revised Code Sections 4112.02 and/or 4112.99
### (Regarded-As Disability Discrimination – Failure to Hire)

### By Plaintiff Kara First Against All Defendants

90.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

91.     Plaintiff was at all relevant times an "employee" within the meaning of Ohio Revised Code Section 4112.01(A)(3).

92.     Plaintiff at all relevant times had a "disability" within the meaning of Ohio Revised Code Section 4112.01(A)(13).

93.     Defendants were at all relevant times "employer(s)" within the meaning of Ohio Revised Code Section 4112.01(A)(2).

94.     Defendants violated Ohio Revised Code Sections 4112.02 and/or 4112.99 when they refused to hire Plaintiff because of her physical and/or mental impairment(s).  Alternatively, Plaintiff's physical and/or mental impairment(s) was a motivating factor in their decision to refuse to hire Plaintiff.

95.     As a proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

96.     Consistent with Ohio Revised Code Section 2315.21, Plaintiff is entitled to punitive damages because the actions or omissions of Defendants demonstrate malice or

aggravated or egregious fraud, and/or Defendants as principals or masters knowingly authorized, participated in, or ratified the actions or omissions that so demonstrate.

97.     Consistent with the rule in *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 71 Ohio App.2d 174, 327 N.E.2d 654 (1975), and because Plaintiff is entitled to punitive damages, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count IV.

**COUNT V**

**Violation of Ohio Revised Code Sections 4112.02 and/or 4112.99**
**(Disability Discrimination – Failure to Accommodate)**

**By Plaintiff Kara First Against All Defendants**

98.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

99.     Plaintiff was at all relevant times an "employee" within the meaning of Ohio Revised Code Section 4112.01(A)(3).

100.     Plaintiff at all relevant times had a "disability" within the meaning of Ohio Revised Code Section 4112.01(A)(13).

101.     Defendants were at all relevant times "employer(s)" within the meaning of Ohio Revised Code Section 4112.01(A)(2).

102.     Defendants violated Ohio Revised Code Sections 4112.02 and/or 4112.99 when they failed to provide a reasonable accommodation for Plaintiff's disability.

103.     As a proximate result of Defendants' actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

104.     Consistent with Ohio Revised Code Section 2315.21, Plaintiff is entitled to punitive damages because the actions or omissions of Defendants demonstrate malice or

aggravated or egregious fraud, and/or Defendants as principals or masters knowingly authorized, participated in, or ratified the actions or omissions that so demonstrate.

105. Consistent with the rule in *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 71 Ohio App.2d 174, 327 N.E.2d 654 (1975), and because Plaintiff is entitled to punitive damages, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count V.

**COUNT VI**

**Violations of the Employee Retirement Income Security Act as Amended by the
Consolidated Omnibus Budget Reconciliation Act
29 U.S.C. § 1132(c)(1) and 29 U.S.C. §§ 1161 et seq.
(Failure to Provide Required Notice of Right to Elect Continuation Coverage)**

**By Plaintiffs, on Behalf of Themselves and the Classes, Against All Defendants**

106. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

107. Plaintiffs were at all relevant times a "participant[s]" within the meaning of 29 U.S.C. § 1132(a)(1).

108. Plaintiff Kara First was at all relevant times a "covered employee" within the meaning of 29 U.S.C. § 1167(2).

109. Plaintiffs were at all relevant times "qualified beneficiar[ies]" within the meaning of 29 U.S.C. § 1167(3).

110. Defendants were at all relevant times an "employer" within the meaning of 29 U.S.C. § 1002(5) and 29 U.S.C. § 1167(4).

111. Defendant were at all relevant times the "plan sponsor" within the meaning of 29 U.S.C. § 1002(16).

112. Defendant were at all relevant times the "administrator" within the meaning of 29 U.S.C. § 1002(16).

113. Defendants violated 29 U.S.C. § 1132(c)(1) when they failed to meet the requirements of 29 U.S.C. § 1166(2) and 29 U.S.C. § 1166(4) with respect to Plaintiffs and the members of the Classes.

114. As a proximate result of Defendants' actions, Plaintiffs and the members of the Classes have been and continue to be damaged in an amount to be determined at trial.

115. Consistent with 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1, Plaintiffs and the members of the Classes are entitled to statutory damages in the amount of $110 a day from the date of Defendants' violations.

116. Consistent with 29 U.S.C. § 1132(g), Plaintiffs and the members of the Classes are entitled to reasonable attorneys' fees and costs incurred in pursuing Count VI.z

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Classes request judgment in their favor on all claims in this Complaint and requests the following relief:

A.    Economic compensatory damages in an amount to be determined at trial;

B.    Non-economic compensatory damages in an amount to be determined at trial;

C.    Liquidated, treble, punitive, or other exemplary damages in an amount to be determined at trial;

D.    Statutory damages in an amount to be determined at trial;

E.    Reinstatement or, in the alternative, front pay in an amount to be determined;

F.    Mandatory injunctive relief requiring Defendants to provide coverage under their group health insurance plans;

G.    Reasonable attorneys' fees incurred in pursuing the claims against Defendants;

H.    All costs and expenses incurred in pursuing the claims against Defendants;

I.      Pre- and post-judgment interest; and

J.      All other legal and equitable relief this Court and/or a jury determines is appropriate.

## VIII.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs and the members of the Classes demand a trial by jury on all claims and issues that are triable.

Respectfully submitted,

By: /s/ Jason E. Starling
Jason E. Starling (Ohio Bar No. 0082619)
WILLIS SPANGLER STARLING
4635 Trueman Boulevard, Suite 100
Hilliard, Ohio 43026
Telephone: (614) 586-7915
Facsimile: (614) 586-7901
jstarling@willisattorneys.com

John C. Camillus (Ohio Bar No. 0077435), Trial Attorney
LAW OFFICES OF JOHN C. CAMILLUS, LLC
P.O. Box 141410
Columbus, Ohio 43214
Telephone: (614) 558-7254
Facsimile: (614) 559-6731
jcamillus@camilluslaw.com

*Attorneys for Plaintiff Kara First and Plaintiff Suzanne First*