IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KARA FIRST, et al.,

      Plaintiffs,

  v.                                Civil Action 2:22-cv-3296
                                   Judge Michael H. Watson
                                   Magistrate Judge Kimberly A. Jolson

J&C AMBULANCE SERVICES,
INC., et al.,

      Defendants,

**OPINION AND ORDER**

This matter is before the Court on Defendant J&C Ambulance Services, Inc.'s Motion to Compel Full and Complete Discovery Responses. (Doc. 66). For the following reasons, the Motion is **GRANTED in part**. The parties are **ORDERED** to meet and confer in accordance with this order, and file a joint status report on or before **June 27, 2024**, providing notice of the outcome of those discussions.

**I.    BACKGROUND**

This case involves allegations that Defendants violated the Family and Medical Leave Act ("FMLA"), the Employee Retirement Income Security Act (as amended by the Consolidated Omnibus Budget Reconciliation Act ("COBRA")), and Ohio disability discrimination law. (*See generally* Doc. 1). Relevant here, Defendant J&C Ambulance Services, Inc. ("J&C") served its first set of interrogatories and requests for production of documents on Plaintiffs Suzanne First and Kara First in April 2023. (*See* Doc. 66-1 at 1–40). Included in the requests were authorization forms allowing for the release of medical records to counsel for J&C under 45 C.F.R. § 164.508 (HIPAA). (*Id.* at 22–23, 39–40). Plaintiffs responded that they would not execute the authorizations. (*Id.* at 54, 85).

In April and May 2024, J&C again requested the signed authorizations, but Plaintiffs did not respond before J&C filed this motion. (*Id.* at 107–08; Doc. 66 at 5). While J&C has served subpoenas on third parties for the various records, it anticipates (and has been told by at least one) that the third parties will not produce the documents sought without the signed authorizations. (Doc. 66 at 5). The motion at bar seeks to compel Plaintiffs to provide signed authorizations for the release of the following records:

> (1) Full and complete billing, medical or treatment records for treatment relating to Kara First's alleged emotional distress or mental health condition(s) caused or exacerbated by J&C's alleged conduct, including but not limited to counseling, mental health treatment and prescription records of any providers after September 1, 2020 to date including Jenna Green and Christine Gummers ("Mental Health Records").
>
> (2) Full and complete billing, medical or treatment records for Suzanne First's emergency room visit and/or hospital stay for a lung or breathing issue allegedly caused by Ms. First's inability to obtain an inhaler during the gap in her insurance coverage ("Hospital Records").
>
> (3) Documents or ESI relating to Plaintiffs' medical insurance coverage through Medical Mutual (including but not limited to insurance cards, paystub showing premium, plan documents, documents showing effective dates of coverage) ("Insurance Records").
>
> (4) Full and complete billing records or receipts from any and all providers (including but not limited to Community Healthcare) showing any out of-pocket costs incurred during the gap in Suzanne and Kara First's insurance coverage in the months of September-November 2020 ("Out-of-Pocket Billing Records").
>
> (5) Records related to any workers' compensation claims filed by Plaintiff Kara First in connection with the injury/condition that is the basis for her disability and FMLA claims. ("Workers' Compensation Records").

(*Id.* at 6–11). [1]

---

[1] To the extent what J&C seeks differs between the Motion to Compel, the third-party subpoenas, and the unsigned authorization forms included in the April 2023 discovery requests, the Court relies on J&C's representations in the Motion to Compel for the language the signed authorizations will contain.

Rather than granting the motion to compel, Plaintiffs advocate for a different solution. They request that the Court: (1) rule on what medical, mental health, and billing records are relevant; (2) order defense counsel to direct the third-party subpoena recipients to produce the subpoenaed records to Plaintiffs' counsel; (3) order Plaintiffs' counsel to review the records and produce the relevant documents to the defense counsel; (4) order Plaintiffs' counsel to log the records they deem irrelevant; (5) order the parties to meet and confer on an attorneys'-eyes-only basis to resolve any disputes about the relevancy of those records and; (6) order any remaining disputed records to be submitted *in camera* for the Court's review. (Doc. 73 at 6–7).

The Motion has been fully briefed (Docs. 66, 73, 74) and is ripe for review.

## II.     STANDARD

Two federal rules govern the Motion to Compel. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph*

3

*v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

### III. DISCUSSION

Plaintiffs' arguments against the motion to compel fall into two related categories: arguments about relevance of the records and arguments against the signed authorizations themselves. (*See* generally Doc. 73). The Court first considers the discoverability of the records before turning to the issue of the signed authorizations.

### A. Relevance

Plaintiffs agree that "some, but not all, of the records that Defendant J&C seeks are discoverable." (Doc. 73 at 4). Particularly, they agree that state-law privileges for physicians and mental health providers are not applicable, and federal psychotherapist privilege has been waived for Kara First because she seeks emotional distress damages. (*Id.*). But they dispute the relevance of other records as discussed below.

#### a. Mental Health Records

Plaintiffs agree that Kara First's mental health records for September 1, 2020, to the present are relevant because she is seeking damages for emotional distress. (Doc. 73 at 5). But they contest that all records from her primary care physician, Dr. Jenna Green, are relevant to her mental health. They argue the same, but to a lesser extent, for Christine Gummere, a licensed social worker who provided mental health care to First. The records for which J&C seek authorization to receive, "full and complete billing, medical, or treatment records for treatment *relating to Kara First's alleged emotional distress or mental health conditions* . . . after September 1, 2020 to date . . .," appear to be cabined to fit Plaintiffs' concession. (Doc. 66 at 6 (emphasis added)). While true, as Plaintiffs argue, that what is "related to mental health" is subject to different interpretations,

4

this Court has found similar language sufficiently narrow. (Doc. 73 at 3); *cf. Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 554 (S.D. Ohio 2014) ("The Court has already concluded that Defendant must limit its discovery requests to medical information from mental health providers and/or that is or could be related to her alleged stress and sleep deprivation."). Plus, these records are relevant to Plaintiff's allegations that she suffered mental harm as a result of J&C's actions. *See id.* ("Once Plaintiff identifies the appropriate providers, the corresponding medical records are responsive and reasonably calculated to lead to the discovery of admissible evidence."); *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 468 (S.D. Ohio 2015) ("O'Malley's medical records are relevant to her claim for emotional distress damages . . . .").

But Plaintiffs state that J&C is already in possession of the mental health records from Dr. Green. (Doc. 73 at 5). If this is true, a signed authorization form directed at her may not be necessary. Plaintiffs acknowledge that J&C is also entitled to seek "formal" records. (*Id.*). J&C does not address this point in its reply brief. So, it is unclear whether J&C does not have the records from Dr. Green or if it is seeking "formal" records. Accordingly, the Court directs the parties to meet and confer on this category of discovery, consistent with the order below.

      b.      *Hospital Records*

J&C seeks a signed authorization for "full and complete billing, medical or treatment records for Suzanne First's emergency room visit and/or hospital stay for a lung or breathing problem allegedly caused by Ms. First's inability to obtain an inhaler during the gap in her insurance coverage." (Doc. 66 at 9). Supporting this request, J&C cites cases where courts in this circuit held that physical impacts from foregone health care treatments resulting from the lack of insurance may constitute prejudice to a plaintiff in considering whether to impose a statutory penalty under COBRA. (*Id.*). Plaintiffs concede that medical bills Suzanne First incurred that

5

were not covered by health insurance due to a gap in coverage are relevant to her COBRA claim. (Doc. 73 at 5). But they challenge the discovery of "medical records containing the details of the *treatment*" as relevant to COBRA claims. (*Id.* (emphasis in original)). They argue courts look only to the fact of delayed treatment, not physical impacts. (*Id.*). The Court is not persuaded by this argument for the purpose of Rule 26.

"[A]s recognized by COBRA, the assessment of statutory damages is discretionary and depends in large part on an assessment of pertinent factors including employer bad faith and prejudice to the employee." *Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 908 (W.D. Mich. 2002) (citing *Bartling v. Fruehauf Corp.*, 29 F.3d 1062 (6th Cir. 1994)). In *Fadalla v. Life Automotive Products, Inc.*, a case both sides cite, the court found sufficient prejudice where a plaintiff delayed medical procedures related to an ectopic pregnancy because she had no health insurance. No. 206CV02679BBDTMP, 2009 WL 3295369, at *3 (W.D. Tenn. Oct. 13, 2009). Important here, the court commented that it found "no other prejudice to the family" despite the fact that a minor child forwent an ear tube procedure because "the only impact . . . was the necessity for her to go on antibiotics, which caused no physical impact on her." *Id.* So, the court considered both the delayed treatment and the physical impacts when attending to prejudice. Courts in other circuits have similarly understood *Fadalla*. *See, e.g.*, *In re Interstate Bakeries Corp.*, 704 F.3d 528, 538 (8th Cir. 2013) (rejecting an argument that sufficient prejudice existed to justify a penalty when medical care was postponed but the employee showed "no specific evidence as to what that medical care would have been or how the postponement resulted in a 'physical impact' on him."); *Honey v. Dignity Health*, 27 F. Supp. 3d 1113, 1125 (D. Nev. 2014) ("In other words, the delay in treatment must cause some type of physical harm, as opposed to simply postponing a recommended procedure."). More still, *Chapman v. Brentlinger Enterprises*, held that a plaintiff

6

showed prejudice because she "delayed medical treatment for what turned out to be malignant skin cancer." No. 2:20-cv-05009, PAGEID 5702, (S.D. Ohio July 7, 2023). Although it did not comment more specifically on the prejudice showing, the Court seemingly considered the impact of delayed treatment—a late diagnosis of malignant skin cancer. *Id.* While Plaintiff argues some courts attend only to the delayed treatment in their prejudice analysis, *Holford,* 218 F. Supp. 2d at 908, these cases show that treatment records can be pertinent to a court's discretionary statutory damages analysis.

Therefore, without comment on how or on what grounds the Court may ultimately decide the question of prejudice, both the billing and medical treatment records at issue here are relevant under Rule 26's reach. And J&C's ask is narrow—seeking only billing and treatment records as related to Suzanne First's emergency room visit and/or hospital stay for a lung or breathing problem as caused by J&C. Accordingly, this category of records is discoverable.

   *c.*  *Insurance Records*

Plaintiffs do not challenge the discoverability or relevance of the records sought from Medical Mutual, as long as the records are limited to medical insurance coverage and billing. (Doc. 73 at 6; *see also* Doc. 64 at 5–13 (subpoenas send to Medical Mutual seeking records relating to Plaintiffs' medical insurance coverage)). The language of J&C's request for this category of records is sufficiently narrow and clearly relevant to this matter as it relates to Plaintiffs' claims. (*See* Doc. 66 at 10 (requesting authorization forms for documents or ESI "related to Plaintiffs' medical insurance coverage through Medical Mutual . . . .")).

    *d.*  *Out-of-Pocket Billing Records*

  Similarly, Plaintiffs do not oppose the discoverability of billing records showing out-of-pocket costs from September to November 2020. (Doc. 73 at 6). But they say treatment details should be produced only if they relate to Kara First's serious health condition for the FMLA claim, or if they relate to her disability or mental health for the discrimination claim. (*Id.*). Again, Plaintiffs are concerned about records for which the Motion to Compel does not represent J&C is seeking authorization. J&C states the signed authorization in this category would be for only "full and complete billing records or receipts from any and all providers . . . showing any out-of-pocket costs incurred during the gap in Suzanne and Kara First's insurance coverage in the months of September-November 2020." (Doc. 66 at 10). This request is sufficiently narrow and relevant to Plaintiffs' claims for unreimbursed medical expenses. Accordingly, the Out-of-Pocket Billing Records are discoverable under Rule 26.

    *e.*  *Workers' Compensation Records*

  Finally, Plaintiffs do not object to the discoverability or relevance of the Workers' Compensation Records. (Doc. 73 at 6). Rather, they aver that J&C asks for that which it already has. (*Id.*). Specifically, they say they produced Kara First's "entire workers' compensation claim file" more than a year ago, and her worker's compensation claim has "not had any activity since that time. (*Id.*). For its part, J&C argues that it may not have the complete file. Particularly, the produced documents did not contain a certification that the file was complete and did not "contain transcripts of the hearings at which Plaintiff testified." (Doc. 74 at 6). J&C also contends that the Ohio Bureau of Workers' Compensation advised that it would not produce Kara First's file without a signed authorization form. (*See* Doc. 74 at 6). But it is unclear whether the parties have conferred on the issue of either the certification or the existence of any transcript. If Plaintiffs can certify

they produced Kara First's entire, updated worker's compensation file, including transcripts for any hearing at which Plaintiff testified, a signed authorization form may not be necessary. As such, the parties should meet and confer on this category of discovery and report back consistent with the Court's directive below.

### B. Signed Authorization

Now turning to the authorization forms. Plaintiffs' primary argument against being compelled to provide signed authorizations is that the Federal Rules of Civil Procedure do not authorize such relief, citing *Moody v. Honda of America Manufacturing, Inc.* and *Ward v. ESchool Consultants, LLC*. (Doc. 73 at 1–2); No. 2:05-CV-0880, 2006 WL 1785464, at *4–5 (S.D. Ohio June 26, 2006), *report and recommendation adopted*, No. C-2-05-0880, 2007 WL 1101246 (S.D. Ohio Apr. 11, 2007); No. 2:10-CV-866, 2011 WL 4402784, at *1 (S.D. Ohio Sept. 21, 2011). But as this Court recently noted, "[f]or many practical reasons, the approach in *Ward* and *Moody* has not been universally adopted in every case. The fact that releases are not mandated by Rule 34 does not mean that they are never appropriate." *Roper v. City of Cincinnati*, No. 1:22-CV-652, 2024 WL 1091809 (S.D. Ohio Mar. 13, 2024) (citing *Shahbabian v. TriHealth, Inc.*, No. 1:18-cv-790, 2020 WL 419443, at *9 (S.D. Ohio Jan. 27, 2020)) (remarking the Court would not hesitate to order signed authorizations if the defendant did not receive the relevant records from Plaintiff within a month) (internal quotation marks omitted). Ultimately, a court's decision to compel signed authorizations is an exercise of discretion. *See Collier v. Atrium Med. Corp.*, No. 2:22-CV-1801, 2023 WL 4395903, at *2 (S.D. Ohio July 7, 2023).

Indeed, this Court has observed that, in some cases, the "use of releases to obtain [a party's] medical records directly from her health care providers represents the most efficient and economical way for [a defendant] to obtain those records." *Langenfeld v. Armstrong World Indus.,*

9

*Inc.*, 299 F.R.D. 547, 555 (S.D. Ohio 2014) (compelling the execution of authorization forms where the requests were limited and subject to a protective order); *see also O'Malley*, 311 F.R.D. at 468 (ordering a plaintiff to provide signed authorization forms for medical and employment records when they were relevant to her claims). This logic extends here, particularly when Plaintiffs' proposed six-step solution is not a good use of the parties' or the Court's resources at this stage of litigation. *Cf. McMullen v. Rsrvs. Network, Inc.*, No. 1:12 CV 2140, 2013 WL 395501, at *1 (N.D. Ohio Jan. 31, 2013) ("[Providing records to a neutral third party is] unnecessary as it has long been the practice of federal courts to direct plaintiffs to provide authorizations so that defense counsel may obtain pertinent records directly from health care providers.").

Plaintiffs do not provide an estimate of how long their proposed process could take. Further, J&C has been attempting for over a year to secure the records at issue. Plaintiffs averred they would collect and produce at least some of the records (following much the same procedure as they proposed here), but they have failed to keep to their word. (*See* Doc. 66-1 at 54). This case has been pending for almost two years, and the Court has twice pushed back the discovery deadline. (*See* Docs. 32, 70). It is clear the parties cannot make progress until J&C is in possession of the discoverable records. An efficient and economical solution is necessary and urgent at this point. It is true, as Plaintiffs note, that authorizations may not be required for all the records sought. (Doc. 73 at 2–3). But at this juncture, authorizations are the most efficient way forward.

Still, the Court is sensitive to Plaintiffs' concerns about being in the dark if they are compelled to provide signed authorization forms. For similar reasons, past orders to execute signed authorizations have come with parameters. In *Collier*, the Court ordered that "whenever Defendant uses Plaintiff's authorizations, it must: (1) give Plaintiff notice in each instance; (2) produce copies to Plaintiff of every record or document it receives; and (3) provide counsel's

10

certification that Defendant is not withholding any document or record received by use of Plaintiff's authorizations." 2023 WL 4395903, at *3. The parties are in the best position to determine what those guardrails should be. Accordingly, the parties should meet and confer on this issue to determine the best path forward.

In sum, the records Defendant J&C seeks are relevant and discoverable in this action. While the discovery method proposed by Plaintiffs would unduly slow the progress of this litigation, the Court is not opposed to imposing certain guardrails on their signed authorization.

Consequently, the Motion is **GRANTED in part**. The parties are **ORDERED** to (1) confer on the production of the records from Dr. Green and the Workers' Compensation Records, as described above; and (2) confer on any parameters or processes they will implement pertaining to the signed authorizations forms. The parties are **ORDERED** to file a joint status report on or before June 27, 2024, providing notice of the outcome of those discussions. The Court intends to order the execution of the authorization forms at that time.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED in part**. Specifically, the parties are **ORDERED** to meet and confer in accordance with this order and file a joint status report on or before **June 27, 2024**, providing notice of the outcome of those discussions.

IT IS SO ORDERED.

Date: June 21, 2024

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE